IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Elizabeth Sherman, on behalf of herself and all others similarly situated,<br><br>              Plaintiff,<br><br>         V.<br><br>AMERICAN EAGLE EXPRESS, INC., d/b/a AEXGROUP,<br><br>              Defendant | CIVIL ACTION NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. This is a class action complaint brought to obtain declaratory, injunctive and monetary relief on behalf of a class of employees of defendant, for violations of, <u>inter alia</u>, the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.,* the Pennsylvania Minimum Wage Act, 43 P.S. §333.101 *et seq.*, as well as other rights, obligations, privileges and benefits owed to the class by defendant.

2. The class consists of American Eagle Express ("American Eagle") delivery drivers employed in Pennsylvania, whom defendant has improperly misclassified as "independent contractors," but who are, in actuality, "employees" of defendant under both common and statutory law.

3. This action challenges both the misclassification of these workers and defendant's denial to plaintiff and the class of the rights, obligations, privileges and benefits owed to them as employees.

## VENUE

4. Venue is proper in the Eastern District of Pennsylvania in that plaintiff works in this District; the American Eagle terminal from which plaintiff makes deliveries is located in Aston, Pennsylvania; and the actions complained of took place, inter alia, in the Eastern District of Pennsylvania.

## JURISDICTION

5. There is federal jurisdiction over this matter pursuant to 28 U.S.C. §1332(d)(2), as amended by Public Law 109.2, 119 Stat. 4 (2005), in that this is a class action, the matter in controversy exceeds the sum of $5 million, exclusive of interest and costs, and members of the class are citizens of a state different from the defendant.

## PARTIES

6. Plaintiff Elizabeth Sherman is an individual residing in Willingboro, New Jersey, who works in Pennsylvania as an American Eagle delivery driver, driving out of defendant's terminal in Aston, Pennsylvania.

7. Like all members of the class, plaintiff works as a delivery driver for American Eagle in Pennsylvania and has been misclassified by defendant as an "independent contractor."

8. Defendant American Eagle Express, Inc. is a corporation with its principal place of business in Aston, Pennsylvania, and is engaged in providing delivery services to businesses in, inter alia, Pennsylvania.

## CLASS ACTION ALLEGATIONS

9. Plaintiff brings the claims set forth in **Counts I -V,** as a class action pursuant to Fed.R.Civ.P. 23, on behalf of a class defined as:

> **All individuals who worked as American Eagle delivery drivers in Pennsylvania, between February 10, 2006 and the present, who were designated by defendant as "independent contractors."**

10. In addition, as to the claims set forth in **Count VI**, Plaintiff also brings this action pursuant to Fed.R.Civ.P. 23 on behalf of a sub-class defined as:

> **All class members who fit within the class definition set forth above who also drive delivery vehicles on behalf of defendant which are less than 10,000 pounds gross weight.**

11.  The class and sub-class for whose benefit this action is brought are each so numerous that joinder of all members is impracticable.

12. Upon information and belief, there are over 200 class members, each of whom worked as an American Eagle delivery driver under the conditions described herein, each of whom was improperly classified by defendant as an "independent contractor."

13. Upon information and belief, there are over 150 such drivers who drive delivery vehicles on behalf of defendant which weigh less than 10,000 pounds gross weight.

14. The claims in this action arise exclusively from the pre-printed portions of uniform documents, and the uniform policies of defendant as described herein.

15. No violations are a result of any oral communications or individualized interaction between any delivery driver and defendant. Rather, all policies and actions challenged herein are uniform policies directed towards and relating to the class as a whole.

16. There are common questions of law and fact affecting the rights of all class members, including, <u>inter</u> <u>alia</u>, the following:

> **a. whether plaintiff and the class are employees of defendant;**

**b. whether defendant has violated the rights of plaintiff and the class under the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1** *et seq.*;

**c. whether defendant has violated the rights of the class under the Pennsylvania Minimum Wage Act, 43 P.S. §333.101** *et seq.*;

**d. whether plaintiff and the class are entitled to an accounting by defendant of all hours worked on behalf of defendant, all wages paid by defendant, all deductions from wages made by defendant and the basis of all such deductions;**

**f. whether the class is entitled to declaratory relief declaring that they are employees of defendant;**

**g. whether the class is entitled to injunctive relief requiring defendant to convey to the class the rights, privileges and benefits of employees;**

**h. whether defendant has been unjustly enriched at the expense of plaintiff and the class;**

**i. whether the members of the sub-class of drivers who drive delivery vehicles of less than 10,000 pounds gross weight are entitled to overtime pay under Pennsylvania law.**

17. Plaintiff is a member of the class and sub-class she seeks to represent and her claims are not only typical of all class members and sub-class members, they are identical, arising from the same factual and legal basis as those of the class.

18. Plaintiff has no interest antagonistic to, or in conflict with, the class or sub-class. Plaintiff will thoroughly and adequately protect the interests of the class and sub-class, having retained qualified and competent legal counsel to represent her and the class.

19. All members of the class have been injured by the same actions of defendant in the same manner.

20. Defendant has acted and refused to act on grounds generally applicable to the class and sub-class, thereby making appropriate injunctive and declaratory relief for the class as a

whole.

21. Since defendant continues to misclassify all American Eagle delivery drivers in Pennsylvania as "independent contractors," and to classify all members of the sub-class as exempt from overtime pay requirements, the prosecution of separate actions by individual class members will create a risk of inconsistent or varying adjudications.

22. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, the common questions will predominate, and there will be no unusual manageability issues.

## FACTS GIVING RISE TO THE CAUSES OF ACTION

23. Defendant employs thousands of "American Eagle" delivery drivers throughout the United States, including drivers in the State of Pennsylvania.

24. As a condition of employment, each "American Eagle" delivery driver employed by defendant in Pennsylvania is required to sign a lengthy form contract entitled the "Transportation Brokerage Agreement" ("TBA") which incorrectly and falsely purports to classify these drivers as "independent contractors" rather than employees of defendant.

25. The TBA is a form contract, the terms of which are identical or substantially similar for every class member.

26. Despite the TBA's mischaracterization of the class members as "independent contractors," defendant is fully aware that plaintiff and the class were and are employees of defendant as a matter of law.

27. Upon information and belief, defendant's misclassification of these workers is part of a scheme by which defendant seeks to deny these delivery drivers the benefits, rights and

privileges owed to employees under the law.

28. At all relevant times, defendant was fully aware that the extent of defendant's direction and control over the manner and means by which class members performed their work for defendant was inconsistent with the legal definition of "independent contractors."

29. At all relevant times, defendant was fully aware that the extent of defendant's direction and control over the manner and means by which class members were required to perform their work for defendant created a de facto and de jure employer/employee relationship.

30. In particular, defendant was aware, inter alia, of each of the following facts.

31. Defendant unilaterally controls **all** aspects of the class members' work schedule: determining the times when drivers make deliveries, how many deliveries are made, what is delivered, the order in which deliveries are made, and how long drivers work each day.

32. Defendant requires class members to work out of a terminal owned and operated by defendant, where defendant assigns the items to the class for delivery and pick up each day.

33. Defendant unilaterally determines how many pick ups and deliveries class members make each day.

34. Defendant unilaterally determines how many hours class members work each day.

35. Defendant unilaterally determines the amounts charged to customers for a delivery.

36. Defendant forbids plaintiff and the class from refusing to undertake deliveries assigned by defendant.

37. Plaintiff and the class deliver exclusively for defendant and are prohibited by defendant from making other deliveries for any other delivery companies.

38. Defendant maintains sole ownership and control over the delivery "route" assigned by

defendant to each class member.

39. The "route" is unilaterally assigned by defendant to each class member, consisting of a number of pick-ups and deliveries to defendant's customers.

40. The customers served on each such route are defendant's customers, not customers of any class member.

41. Plaintiff and the class were not permitted to add or delete customers from a "route."

42. Each such "route" remained the property of defendant and could not be sold, transferred or altered by a class member.

43. For each "route," defendant determined the times when each delivery would be made, the number of delivery "stops" per day which would be made <u>and</u> the order in which each delivery would be made.

44. Defendant requires each class member to report in to defendant from the "route" by cell phone at least once per hour, so that defendant can exercise complete control over class members' performance, including checking progress, altering delivery times and/or the order of stops and/or so that defendant can provide additional instructions to drivers.

45. Defendant prohibits class members from speaking to anyone on a cell phone other than defendant while making deliveries for defendant.

46. Defendant prohibits class members from having any "helper" with them while making deliveries for defendant.

47. Defendant prohibits class members from having anyone ride along with them while making deliveries for defendant.

48. Defendant prohibits class members from taking meal breaks, bathroom breaks, breaks

to buy cigarettes or to buy other sundries while the driver is driving the "route" assigned to them by defendant.

49. Defendant fines and otherwise disciplines drivers who make stops for meals or to buy cigarettes.

50. Defendant requires drivers to ask defendant's permission before taking a day off or a vacation.

51. If defendant gives permission for a driver to have a day off or a vacation, the driver is not allowed to provide a replacement driver to drive the "route."

52. Rather, defendant unilaterally selects and assigns another driver to drive the class member's route in the class member's absence.

53. Defendant prohibits anyone other than the driver assigned by defendant to drive a "route."

54. Class members are not allowed to hire "substitutes" to drive for them.

55. Defendant requires each class member to purchase specific equipment and services selected unilaterally by defendant.

56. Defendant requires class members to wear shirts and hats emblazoned with defendant's logo on them while making deliveries.

57. Class members are required to purchase these shirts from defendant or a supplier chosen by defendant.

58. Defendant also requires class members to purchase a specific chain and lock set from defendant and does not allow class members to provide their own chains and locks.

59. Despite statements to the contrary in the TBA, defendant requires class members to purchase what defendant terms "occupational accident insurance" from defendant and defendant

deducts a weekly amount from each driver's pay for such insurance.

60. In actuality, defendant is required by law to provide "workman's comp" insurance to all its drivers because they are de facto and de jure employees of defendant.

61. Defendant employs supervisors and managers at the terminal, who have extensive supervisory control over plaintiff and the class and who have the power to discipline or fire drivers for refusal to follow any orders from such a supervisor or manager.

62. Defendant provides training to plaintiff and the class regarding, inter alia, defendant's policies and procedures and has drivers periodically followed by a "compliance" officer employed by defendant to enforce compliance with these policies.

63. Defendant "fines" and otherwise disciplines class members for failing to follow the policies and procedures set by defendant.

64. Plaintiff and the class are an integral part of defendant's business, and the services they perform are essential to the conduct of that business.

65. Plaintiff and the class do not exercise any business management judgment or discretion in connection with the services they perform for defendant.  Moreover, defendant prohibits plaintiff and the class from exercising independent business judgment or discretion regarding the services they perform.

66. Despite its knowledge of all of the aforementioned facts, defendant persists in a uniform policy of misclassifying plaintiff and the class as "independent contractors," with full knowledge that they are actually employees of defendant as a matter of law.

67. Defendant was and is obligated by law to provide certain benefits, rights and privileges to its employees.

68. These include, but are not limited to, the following:

      a. Paying wages for all work performed at the direction of defendant;

      b. Providing "workman's compensation insurance" to drivers at no cost to them and paying "workman's compensation" contributions;

      c. Paying overtime pay for work performed in excess of 40 hours per week by all members of the sub-class;

      d. Paying employees for terminal waiting time, deadhead time and/or other time during which defendant requires plaintiff and the class to be present at defendant's terminal;

      e. Paying unemployment insurance and unemployment insurance contributions;

      f. Making Federal Insurance Compensation Act ("FICA") contributions;

      g. Providing legally mandated meal, break and rest periods;

      h. Certain retirement, health and welfare benefits to which plaintiff and the class may be entitled as employees of defendant.

      69. A significant amount of work, required for the completion of the tasks assigned by defendant, was performed by plaintiff and the class each day at defendant's terminal for which plaintiff and the class received no compensation.

      70. Plaintiff and the class were also required by defendant to spend time waiting at defendant's terminal, or at the places of business of defendant's customers, for which time defendant paid no compensation.

      71. Nor did defendant pay plaintiff and the class for time spent in training required by defendant.

      72. Plaintiff and the class were required to work in excess of 40 hours per week without overtime pay.

73. At no time were plaintiff and the class provided with meal breaks or other rest periods.

74. At no time were plaintiff and the class provided with unemployment compensation or workman's compensation insurance.

75. Nor did defendant make FICA contributions on behalf of plaintiff and the class.

76. Defendant was also prohibited by law from taking unauthorized deductions from the wages of employees, such as plaintiff and the class.

77. Defendant nevertheless made such deductions from the wages of plaintiff and the class.

78. This includes, but is not limited to, a policy of deducting the cost of so-called "occupational accident insurance" from a driver's pay; insurance which defendant requires class members to purchase from defendant.

79. This is especially egregious since defendant is required by law to provide workman's compensation insurance to all its employees and to make workman's compensation contributions at no cost to these employees.

80. In addition, plaintiff and the class were required to pay, without reimbursement, defendant's operating expenses, all of which were the legal responsibility of defendant.

81. Such expenses included, but were not limited to, the following:

a. the cost of shirts with defendant's logo, which defendant required to be worn by drivers,

b. worker's insurance required by defendant,

c. fuel;

d. the cost of other equipment mandated by defendant, including a specific type and make of chain and lock required by defendant.

82. In addition, approximately 90% of the class members drive delivery vehicles on behalf of defendant which are less than 10,000 pounds gross weight and these drivers constitute a sub-class of the main class.

83. Delivery drivers who drive delivery vehicles of less than 10,000 pounds gross weight are exempt from regulations promulgated by the Department of Transportation ("DOT").

84. Pennsylvania law specifically and expressly requires that overtime pay be paid to all employee drivers who are exempt from DOT regulations, including drivers of vehicles which are less than 10,000 pounds gross weight.

85. Despite this, defendant does not pay overtime pay to the sub-class and classifies all such sub-class members are exempt from overtime pay requirements.

## COUNT I

## INJUNCTIVE AND DECLARATORY RELIEF

86. Plaintiff incorporates all preceding paragraphs as though fully set forth at length herein

87. Plaintiff and the class are entitled to declaratory relief in the form of an order declaring that they are employees of defendant.

88. Plaintiff and the class are entitled to an order for injunctive relief:

a. prohibiting defendant from misclassifying plaintiff and the class as independent contractors; and

b. requiring defendant to provide plaintiff and the class with all the rights, benefits

and privileges of employees.

89. In addition, plaintiff and the class are entitled to an order directing defendant to make a full accounting of all hours worked by plaintiff and the class on behalf of defendant, all wages that are and were due, and all deductions made from such wages by defendant.

## COUNT II

### PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW

### 43 P.S. § 260.1 *et seq.*

90. Plaintiff incorporates all preceding paragraphs as though fully set forth at length herein.

91. Defendant is obligated to pay wages to plaintiff and the class based upon the number of hours they work and to make only those deductions and withholdings from wages that are required or authorized by law.

92. Defendant breached its obligations by engaging in the conduct more specifically described in the paragraphs above.

93. Defendant has no justification for their failure and/or refusal to pay such wages and for these unauthorized deductions.

94. Defendant's conduct constitutes violations of the Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.*

## COUNT III

### PENNSYLVANIA MINIMUM WAGE ACT

### 43 P.S. §333.101 *et seq.*

95. Plaintiff incorporates all preceding paragraphs as though fully set forth at length herein.

96. Defendant was obligated to pay plaintiff and the class for each hour worked on behalf of defendant, including time spent at defendant's terminal, deadhead time, and performing other tasks required by defendant.

97. Defendant breached its obligations by engaging in the conduct more specifically described in the paragraphs above.

98. Defendant's conduct constitutes violations of the Pennsylvania Minimum Wage Act, 43 P.S. §333.101 *et seq.*

## COUNT IV

## UNJUST ENRICHMENT

99. Plaintiff incorporates all preceding paragraphs as though fully set forth at length herein.

100. By the acts alleged herein, defendant has received benefits from plaintiff and the class, under circumstances which make it unjust that those benefits be retained by defendant.

101. Specifically, plaintiff and the class have advanced certain payments for obligations which were owed by defendant for costs and expenses which were necessary for the operation of defendant's business, including the purchase of insurance for delivery vehicles, the purchase of defendant's uniform shirts, the purchase of work accident insurance for drivers, the purchase of fuel used to make deliveries for defendant, the purchase of chains and locks required by defendant and other expenses.

102. At the same time, defendant has retained benefits resulting from defendant's refusal to pay defendant's legal obligations as employer, including, but not limited to, workman's compensation contributions, workman's compensation benefits, unemployment insurance payments, unemployment insurance, wages and overtime pay.

103. As a consequence, defendant is liable to either return these benefits or pay

reasonable compensation to plaintiff and the class.

## COUNT V

## PENNSYLVANIA WORKMAN'S COMPENSATION ACT

## 77 P.S. 501(a)-(d)

104. Plaintiff incorporates all preceding paragraphs as though fully set forth at length herein.

105. As an employer, defendant was required by 77 P.S. §501(a)(1) to insure payment of compensation to employees through the State Workman's Insurance Fund or an insurance company authorized to insure such liability in Pennsylvania.

106. Defendant did not make workman's compensation contributions or otherwise secure such benefits to plaintiff and the class.

107. Pursuant to, <u>inter alia</u>, 77 P.S. §501(d), plaintiff and the class are entitled to relief compelling defendant to comply with its obligations under this statute.

## COUNT VI

## PENNSYLVANIA OVERTIME PAY REQUIREMENTS (ON BEHALF OF SUB-CLASS)

108. Plaintiff incorporates all preceding paragraphs as though fully set forth at length herein.

109. The Pennsylvania Minimum Wage Act, 42 Pa.C.S.A. §§ 333.101 et seq., requires that overtime pay be paid to, <u>inter alia</u>, delivery drivers working in Pennsylvania except those drivers for whom the Federal Secretary of Transportation has power to establish qualifications and the maximum hours of service under 49 U.S.C. §§ 3102(b)(1) and (2). <u>See</u> 43 P. S. §§ 333.105 (b)(7).

110. The Federal Secretary of Transportation has no authority to, and has not, established qualifications and maximum hours of service for delivery drivers who drive delivery vehicles of less than 10,000 pounds.

111. As such, defendant is required by Pennsylvania law to pay overtime pay to all delivery driver employees who drive delivery vehicles of less than 10,000 pounds.

112. Despite this, defendant does not pay overtime pay to its delivery drivers who drive delivery vehicles of less than 10,000 pounds.

113. The sub-class of drivers who drive delivery vehicles of less than 10,000 pounds, like all class members, are employees of defendant as a matter of fact and law.

114. Accordingly, in addition to the relief requested on behalf of all class members, the members of the sub-class of who drive delivery vehicles of less than 10,000 pounds are entitled to an order requiring defendant to pay overtime pay to such drivers, as well as an accounting of all hours worked and overtime pay previously not paid and other relief to make these sub-class members whole.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff asks this court to:

  a. Certify this matter as a class action pursuant to Fed.R.Civ.P. 23;

  b. Enter an order for injunctive and declaratory relief as described herein;

  c. Enter judgment in favor of each class member for damages suffered as a result of the conduct alleged herein, to include interest and pre-judgment interest;

  d. Award plaintiff reasonable attorneys' fees and costs;

  e. Grant such other and further legal and equitable relief as the court deems just and necessary.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury as to all issues so triable.

                                                  The Law Firm of
                                            PHILIP STEPHEN FUOCO


                            BY:   s/Philip Stephen Fuoco

                                 Philip Stephen Fuoco (PF7362)

                                 PA I.D. No. 17071
                                 24 Wilkins Place
                                 Haddonfield, NJ 08033
                                 (856) 354-1100


Dated: February 10, 2009