IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELIZABETH SHERMAN, et al. | : | CIVIL ACTION |
| *On behalf of themselves and all others* | : | |
| *similarly situated* | : | No. 09-575 |
| | : | |
| v. | : | |
| | : | |
| AMERICAN EAGLE EXPRESS, INC. | : | |
| *d/b/a AEXGROUP* | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                                                    **March 8, 2012**

Plaintiffs Elizabeth Sherman, Mohamad Abushalieh, Anthony Sturgis, and William Walsh,

delivery drivers for Defendant American Eagle Express, Inc. (AEX), bring this action for declaratory,

injunctive, and monetary relief, pursuant to Pennsylvania's Wage Payment and Collection Law

(WPCL), Minimum Wage Act (MWA), and Workers' Compensation Act (WCA), on behalf of a

putative class of current and former AEX delivery drivers who were allegedly improperly classified

as independent contractors. Plaintiff's move for class certification as to their WPCL and MWA

claims only. Plaintiffs ask this Court to certify a class, pursuant to Federal Rule of Civil Procedure

23, of all AEX delivery drivers who were classified by AEX as independent contractors and worked

in Pennsylvania between February 10, 2006 and the present. Plaintiffs also seek certification of a

sub-class consisting of class members who operated vehicles weighing 10,000 pounds or less. For

the reasons set forth below, this Court finds Plaintiffs have satisfied the requirements of Rule 23 as

to their WPCL claim, but not as to their MWA claims. Accordingly, the motion for class

certification will be granted in part and denied in part.

**FACTS**[1]

AEX is a courier company in the business of delivering financial and medical products to banking institutions, hospitals, and pharmacies in the mid-Atlantic region.  AEX contracts with several hundred drivers to make its scheduled pick-ups and deliveries.  Since May 2008, all AEX drivers have been required to sign a form contract, the Transportation Brokerage Agreement (TBA), which classifies each driver as an independent contractor.  Plaintiffs assert this classification is improper because AEX completely controls the manner, method, and means of each driver's work, thereby creating an employer-employee relationship under Pennsylvania law.

Plaintiffs contend AEX has a financial motive to classify its drivers as independent contractors because it is both able to defray the costs of delivery equipment—by requiring each driver to purchase his or her own truck, vehicle insurance, work phone, and uniform—and to avoid the financial burden of treating its drivers as employees entitled to protection under Pennsylvania's employment laws.  Despite language in the TBA indicating each driver is an individual businessperson, Plaintiffs allege AEX exercises pervasive control over its drivers' activities, requiring them to adhere to AEX's strict business policies and mandated practices.  The policies and regulations which govern driver conduct are memorialized in the TBA, as well as in a series of documents which apply universally to all AEX drivers, including the Security and Compliance Audit

---

[1]  "In deciding whether to certify a class under Fed. R. Civ. P. 23, the district court must make whatever factual and legal inquiries are necessary and must consider all relevant evidence and arguments presented by the parties."  *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3d Cir. 2008).  Class certification "calls for findings by the court, not merely a 'threshold showing' by a party, that each requirement of Rule 23 is met."  *Id.*  Such findings must be supported by factual determinations made by a preponderance of the evidence.  *Id.*  A court must also "resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits—including disputes touching on elements of the cause of action."  *Id.*

Process form, the Compliance Audit checklist, the Driver Quality Control form, and the AEX Group's Policy on Drugs and Alcohol form (collectively, the AEX standard forms).  Additionally, Plaintiffs have offered the declarations of five former AEX employees who, in their role as dispatchers, supervised AEX delivery drivers and became familiar with AEX's company-wide business practices and operations (the dispatcher declarations).  These dispatcher declarations affirm that AEX exercised pervasive control over its drivers.[2]

AEX's policies and practices require, *inter alia*, that drivers check in daily at AEX routing centers and follow assigned itineraries.  These itineraries dictate the precise route the driver must take and the exact time each package must be delivered.  If drivers wish to change the order or route of their deliveries, they must receive permission from AEX to do so.  Drivers are also obligated to regularly report on the progress of their deliveries.  AEX requires its drivers to wear clothing with AEX logos, have photo identification readily visible on their person, and carry a spare key and cellular phone at all times.  In addition, AEX prohibits drivers from having helpers or other people ride with them in their vehicles unless such individuals are pre-approved.  AEX drivers are not permitted to sell or assign their routes and are required to receive AEX approval before taking vacation or sick leave.  The drivers are subject to fines, deducted from their pay, if they do not adhere to AEX's strict rules governing driver conduct, appearance, and delivery performance.  AEX ensures compliance with these rules by dispatching a team of auditors who follow and sporadically inspect AEX drivers.

Plaintiffs assert AEX, by improperly classifying its delivery drivers as independent

---

[2]  AEX challenges the competence of much of this evidence; however, as addressed below, this Court finds AEX's challenges lack merit.

3

contractors, failed to provide them the benefits to which they are legally entitled as employees under Pennsylvania law, including compensation for all hours actually worked, overtime pay, protection from unauthorized deductions and withholdings from wages, and workers' compensation insurance provided by AEX.  Plaintiffs' First Amended Complaint seeks a declaration that all AEX delivery drivers in Pennsylvania are employees of AEX and an injunction barring AEX from classifying such drivers as independent contractors (Count I), as well as an order compelling AEX to comply with its obligations under the Pennsylvania Workers' Compensation Act (WCA), 77 Pa. Stat. Ann. § 501 (Count V).  Plaintiffs also bring claims for monetary relief for violations of the Pennsylvania Wage Payment and Collection Law (WPCL), 43 Pa. Stat. Ann. § 260.1 et seq. (Count  II), and the Pennsylvania Minimum Wage Act (MWA), *id.* § 333.101 et seq. (Counts III and VI).[3]

Plaintiffs ask this Court to certify a class for Counts II (WPCL) and III (MWA) consisting of "[a]ll individuals who have worked for AEX in Pennsylvania between February 10, 2006 and the present and performed work as delivery drivers classified as independent contractors."  Pls.' Mem. on Mot. for Class Certification 1.  For Count VI (MWA), Plaintiffs seek to certify a sub-class consisting of "[a]ll individuals who have worked for AEX in Pennsylvania between February 10, 2006 and the present, performed work as delivery drivers classified as independent contractors, and operated vehicles weighing 10,000 lbs or less."  *Id.* at 2.

**DISCUSSION**

As a preliminary matter, AEX challenges the competence of much of Plaintiffs' proffered evidence in support of class certification.  First, AEX asserts Plaintiffs' documentary exhibits 11

---

[3] Plaintiffs voluntarily withdrew their unjust enrichment claim (Count IV).  *See* Stipulation, dated March 25, 2011 (ECF No. 173).

through 16[4] are not competent to support class certification because they are too vague and not authenticated, some fall outside the proposed class period, and Plaintiffs have failed to show they are relevant or how they apply to the putative class.  This Court disagrees.

Evidence in support of class certification need not be admissible at trial.  *Hayden v. Freightcar Am., Inc.*, No. 07-201, 2008 WL 375762, at *2 (W.D. Pa. Jan. 11, 2008); *Vinson v. Seven Seventeen HB Phila. Corp.*, No. 00-6334, 2001 WL 1774073, at *20 n.28 (E.D. Pa. Oct. 31, 2001) ("[O]n a motion for class certification, the evidentiary rules are not strictly applied and courts will consider evidence that may not be admissible at trial." (quoting *Rockey v. Courtesy Motors, Inc.*, 199 F.R.D. 578, 582 (W.D. Mich. 2001))).  The documents challenged by AEX all reflect AEX's policies governing delivery drivers which are described in the deposition testimony and declarations proffered by Plaintiffs' in support of their certification motion.  To the extent these policies were in force during the class period, as Plaintiffs assert, the documents are relevant to show the extent of AEX's control over its drivers, and are thus relevant to this Court's determination of Plaintiffs' class certification motion.

Second, AEX argues the declarations of three Maryland dispatchers are not competent

---

[4]  The exhibits are as follows: Exhibit 11 consists of example "manifests"—the daily schedules of deliveries AEX gives to drivers.  The documents attached as Exhibit 12 are example notes from AEX's "Rockhopper" system, a computer program AEX uses to track deliveries.  Exhibit 13, entitled "AEX Security and Compliance Audit Process form," depicts a diagram explaining AEX's driver audit process.  Exhibit 14 consists of two Compliance Audit checklist forms for Plaintiff Sherman. Exhibit 15 is a Driver Quality Control form, which Plaintiffs contend lists eight areas in which AEX exercises "quality control" over its drivers: drug testing, criminal background checks, monthly vehicle inspection, semi-annual motor vehicle record inspections, random ongoing security and compliance audits, directed operation of late model delivery vehicles, cell phone communication systems, and real-time courier tracking conducted by AEX Central Dispatch.  Exhibit 16 is an AEX Group Policy on Drugs and Alcohol form, signed by Sherman, indicating her consent to AEX's drug and alcohol testing policy.

evidence because the dispatchers either have no knowledge of AEX's Pennsylvania practices or have knowledge derived solely from inadmissible hearsay.  In their declarations, however, the dispatchers state they are aware of AEX's national policies, which they know to be applied universally across all states, including Pennsylvania.  To the extent any of this knowledge was derived through alleged hearsay statements, such statements appear to have come from other AEX employees and are likely admissible as party admissions.  *See* Fed. R. Evid. 801(d)(2)(D) (defining statements offered against an opposing party by that party's agent or employee regarding matter within the scope of employment as not hearsay).  Because the dispatchers attest to having first-hand knowledge of AEX's national practices regarding delivery drivers, their declarations are competent.  In any event, Plaintiffs offer two additional declarations from AEX dispatchers who worked at the Aston, Pennsylvania terminal, and who assert the same AEX policies discussed by the Maryland dispatchers were applied to Pennsylvania drivers.

At bottom, AEX's challenges to Plaintiffs' evidence go to the evidence's weight and credibility at trial, and not its admissibility or competence with regard to the instant motion.  The Court next turns to the requirements for class certification.

A class action is "peculiarly appropriate" when a case presents issues which are common to the class as a whole and "when [such issues] turn on questions of law applicable in the same manner to each member of the class." *Hydrogen Peroxide*, 552 F.3d at 309 n.6 (3d Cir. 2008) (quoting *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982)).  A class action "saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion." *Falcon*, 457 U.S. at 155 (citation and internal alteration and quotations marks omitted).  In deciding whether to certify a class under Rule 23, a district court must

6

undertake a "rigorous analysis," making "whatever factual and legal inquiries are necessary and [considering] all relevant evidence and arguments presented by the parties." *Hydrogen Peroxide*, 552 F.3d at 307.  A class will not be certified unless the plaintiff shows by a preponderance of the evidence that all Rule 23 requirements are met. *Id.*

Class certification involves a two-step process.  First, the court must find the proposed class satisfies the four requirements of Federal Rule of Civil Procedure 23(a):

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  These requirements are known as numerosity, commonality, typicality, and adequacy.  Second, the court must determine whether, if the requirements of Rule 23(a) are satisfied, the class falls within one of the three categories provided for in Rule 23(b).

AEX does not dispute Plaintiffs' satisfaction of the numerosity requirement. While no specific number of class members is required to maintain a class action, a class of more than 40 people generally satisfies the numerosity requirement. *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).  Plaintiffs contend there were at least 927 AEX delivery drivers based out of Pennsylvania during the relevant time period, and at least 80% of those—approximately 740 drivers—operated vehicles weighing 10,000 pounds or less.  These numbers clearly satisfy the numerosity requirement as joinder of hundreds of individuals in one action would be impracticable. *See* Fed. R. Civ. P. 23(a)(1).

To meet the commonality requirement of 23(a), Plaintiffs must share "at least one question of fact or law with the grievances of the prospective class." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d

7

Cir. 1994).  "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  *Wal-Mart Stores, Inc. v. Duke*, 131 S. Ct. 2541, 2551 (2011) (quoting *Falcon*, 457 U.S. at 157).  The thrust of this requirement is that the class member's "common contention" must lead the "classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (quotation omitted).  For a question of law or fact to satisfy Rule 23(a)(2), therefore, "determination of its truth or falsity must resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*

The central issue in this case is whether AEX has misclassified its drivers as independent contractors when they are, by law, employees.  Resolution of this issue will be determinative of the claims of the putative class, as Plaintiffs allege AEX has deprived its drivers of certain benefits and privileges due to employees under Pennsylvania law.  Unlike the plaintiffs in *Duke*, who "wish[ed] to sue about literally millions of [allegedly discriminatory] employment decisions at once . . . [w]ithout some glue holding the alleged *reasons* for those decisions together," *id.* at 2552, Plaintiffs here allege AEX's universal policies governing the manner and means by which drivers must perform their work create an employer-employee relationship, rendering AEX's single decision to classify all drivers as independent contractors improper.

Insofar as AEX argues commonality is not satisfied because the tests under Pennsylvania's employment laws for determining whether the class members are employees require individualized assessments, its argument is misplaced as such contentions go to whether common questions of law or fact predominate over individual questions under Rule 23(b)(3), not commonality.  Indeed, similar challenges to an employer's classification of its workers have been held to satisfied the commonality requirement.  *See, e.g.*, *In re FedEx Ground Package Sys., Inc., Emp't Practices Litig.*, 273 F.R.D.

8

424, 468-70, 494-98 (N.D. Ind. 2008) (reviewing multiple class certification motions in multi-district litigation, and certifying classes of FedEx drivers who disputed their classification as independent contractors, including a class alleging violations of Pennsylvania's WPCL); *Dalton v. Lee Publ'ns, Inc.*, 270 F.R.D. 555, 559 (S.D. Cal. 2010) (finding commonality in certifying class of home-delivery newspaper carriers who disputed their classification as independent contractors); *Phelps v. 3PD, Inc.*, 261 F.R.D. 548, 556-557 (D. Or. 2009) (finding commonality in certifying class of delivery drivers who disputed their classification as independent contractors). Here, Plaintiffs have clearly satisfied the commonality requirement.

The third 23(a) requirement, typicality, "safeguard[s] against inter-class conflicts," *Sley v. Jamaica Water & Utils., Inc.*, 77 F.R.D. 391, 394 (E.D. Pa. 1977), by ensuring the class representatives' interests are sufficiently aligned with those of the entire class so the representatives will "work to benefit the entire class through the pursuit of their own goals," *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998). Thus, this Court must analyze "whether [Plaintiffs'] individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of the other class members will perforce be based." *Baby Neal*, 43 F.3d at 57-8 (citation and internal quotation marks omitted). "[E]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Id.* at 58.

Here, Plaintiffs' claims are typical of the class members' claims insofar as they allege violations based on the TBA and not some earlier contract. When a defendant has engaged in a "common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent class members." *In re Linerboard Antitrust*

*Litig.*, 203 F.R.D. 197, 207 (E.D. Pa. 2001) (quotation omitted).  Plaintiffs assert an injury identical

to the injury suffered by other class members—namely, the denial of certain benefits and protections

as a result of their improper classification under the TBA as independent contractors rather than

employees of AEX.  AEX's assertion that Plaintiffs' claims are not typical because some of the class

representatives, in fact, were not denied one of the benefits at issue—unauthorized pay

deductions—does not overcome the fact that Plaintiffs and the class share the central theory

underlying all their claims.

       AEX rightly argues, however, Plaintiffs' claims are not typical of the claims of putative class

members whose relationship with AEX was not governed by the TBA, which AEX only began using

on May 1, 2008.  Plaintiffs have not offered evidence of any AEX pre-TBA driver contracts, and

have not proved by a preponderance of the evidence their claims arising from the TBA are typical

of claims predicated on earlier contracts.  Accordingly, this Court will modify the class period for

both proposed classes to May 1, 2008, to the present.  *See In re Motorola Sec. Litig.*, 644 F.3d 511,

518 (7th Cir. 2011) (holding "a district court has authority to modify a class definition at different

stages in litigation"); *Chedwick v. UPMC*, 263 F.R.D. 269, 272 (W.D. Pa. 2009) ("Courts possess

the authority to limit or modify class definitions in order to provide the precision needed for class

certification." (citations omitted)).

       The final prerequisite under Rule 23(a) is adequacy of representation, which is dependent on

two factors: (1) the plaintiffs' attorney must be competent to conduct a class action; and (2) the class

representatives must not have interests antagonistic to the interests of the class.  *Linerboard*, 203

F.R.D. at 207.  To find the adequacy requirement satisfied, a court must examine the "qualifications

of the counsel to represent the class" and investigate "conflicts of interest between named parties and

the class they seek to represent." *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 312 (3d Cir. 1998) (citations and internal quotation marks omitted).

Plaintiffs' lead attorneys, Harold Lichten and David Cohen, are experienced class-action attorneys, and both have litigated misclassification class actions like this one. The Court is satisfied Attorneys Lichten and Cohen are competent to conduct this class action.

As to the class representatives—Plaintiffs Sherman, Abushalieh, Sturgis, and Walsh—AEX does not dispute Abushalieh's and Sturgis's adequacy, and with good reason. There is no evidence Abushalieh and Sturgis have any interest that conflicts with an interest of the class. AEX contends Walsh cannot adequately serve the class because he performed his contract with AEX through his business, and therefore cannot bring the claims asserted here because a business contracting with another business cannot be an employee. The two pages of Walsh's deposition transcript offered as proof, however, simply do not support AEX's assertion Walsh contracted with AEX through his business.[5] If additional compelling evidence is brought to this Court's attention that Walsh has a conflict of interest with the class members because he contracted with AEX through his business and

---

[5] The portion of the transcript cited by AEX consists of the following:

> Q: And when you got your first rig, would that be close in time to when you started BJK?
> A: It was exactly the day we started it.
> Q: Okay. Do you recall whether you did any formal paperwork or just became BJK, when I should say, did you file anything with the state to become BJK?
> A: We had to file federally.
> Q: Did you get a tax ID number?
> A: Yes.

Def.'s Mem. in Opp'n to Class Certification, Ex. H, Walsh Dep. 24:18-25:2, April 11, 2011. While Walsh's testimony appears to support AEX's contention he started a business, it fails to indicate whether Walsh contracted with AEX individually or through his business. This Court found no evidence in the record that Walsh's business, rather than Walsh himself, contracted with AEX.

not individually, this Court will consider removing Walsh as a class representative pursuant to its authority under Rule 23(c)(1)(C). With no other indication that Walsh's interests conflict with those of the class, this Court finds him to be an adequate representative.

AEX also contends Sherman cannot adequately represent the class because she falsely testified during this case about "the existence and substance of income tax returns." Def.'s Mem. in Opp'n to Class Certification 27. "A district court may consider the credibility of the named plaintiff in determining adequacy of representation." *Dotson v. Portfolio Recovery Assocs., LLC*, No. 08-3744, 2009 WL 1559813, at *2 (E.D. Pa. June 3, 2009) (citing *Savino v. Computer Credit*, 164 F.3d 81, 87 (2d Cir. 1998)). Even if Sherman provided false testimony—which she disputes—her adequacy to represent the class in this case would not be so undermined as to deny certification. Sherman's allegedly false characterization of her tax return filings, although possibly impeachment evidence, does not go to the heart of the claims or defenses, and is not so damning it renders her representation inadequate. *See Gooch v. Life Investors Ins. Co. of Am.*, Nos. 10-5003 & 10-5723, 2012 WL 410926, at *20 (6th Cir. Feb. 10, 2012) (explaining "[o]nly when attacks on the credibility of the representative party are so sharp as to jeopardize the interests of the absent class members" should a representative be found inadequate, and finding the plaintiff's dubious testimony and failure to volunteer he committed insurance fraud did not jeopardize the interests of absent class members); *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 725 (7th Cir. 2011) (stating a representative is inadequate if she is not credible regarding a key issue of a claim). Accordingly, and considering the credibility of her co-Plaintiffs has not been challenged, Sherman's credibility presents no risk the class will be inadequately represented. The Court therefore finds the

final Rule 23(a) requirement met.

Having found the requirements of Rule 23(a) satisfied, the Court must next determine whether Plaintiffs have met their burden of showing the proposed class meets the requirements of one of the Rule 23(b) categories.[6]  Plaintiffs seek certification of their WPCL and MWA claims under Rule 23(b)(3), which authorizes class certification when "questions of law or fact common to class members predominate over any questions affecting only individual members," and when a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  The predominance and superiority inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  In determining whether a class may be certified under this provision, a court should consider:

> (A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

While the predominance test bears some similarity to the elements of Rule 23(a), it is "a standard far more demanding than the commonality requirement." *Hydrogen Peroxide*, 552 F.3d

---

[6] Rule 23(b) provides for three types of class actions: (1) where prosecuting separate actions by individuals would create incompatible standards or harm the ability of nonparties to protect their interests; (2) where a class is seeking primarily injunctive or declaratory relief; and (3) where common questions of law or fact predominate over individual ones, and a class action is the superior method of adjudication. Fed. R. Civ. P. 23(b).  Plaintiffs seek certification pursuant to Rule 23(b)(3) only.

13

at 310-11.  Because common issues must *predominate* over individual claims, "[i]f proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." *Id.* at 311 (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 172 (3d Cir. 2001)).  To satisfy the predominance requirement, Plaintiffs must therefore demonstrate that the elements of their causes of action are "capable of proof at trial through evidence that is common to the class rather than individual to its members." *Id.* at 311-12.  Deciding this issue requires this Court to envision the form a representative trial of Plaintiffs' claims will take, and conduct a "rigorous assessment of the available evidence and the method or methods by which [P]laintiffs propose to use the evidence" to prove their claims.  *Id.* at 112.

The determinative issue for both Plaintiffs' WPCL and their MWA claims is whether the class members were appropriately classified as independent contractors.  If evidence common to the class is capable of resolving whether AEX drivers are employees or independent contractors, then Plaintiffs' claims are suitable for class certification.

Pennsylvania courts have formulated different tests to resolve misclassification claims in the context of the MWA and the WPCL.  The tests under the two statutes are not identical; therefore, this Court will address whether Rule 23(b)(3) is satisfied as to the claims under each statute separately, including whether evidence common to the class can resolve the misclassification issue under each statute's test.  *See* Fed. R. Civ. P. 23(c)(4) (permitting class certification with respect to particular issues when appropriate); *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 441 (4th Cir. 2003) (holding Rule 23(c)(4) permits courts to separate multiple causes of action for certification provided predominance and other certification requirements are met with respect to that cause of

14

action); *see also Bogosian v. Gulf Oil Corp*, 561 F.2d 434, 453 (3d Cir. 1977) (reversing decision denying certification and noting district court should have considered certifying each cause of action separately), *abrogated on other grounds by In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 325 (3d Cir. 2010); *Kalow & Springut, LLP v. Commence Corp.*, No. 07-3442, 2011 WL 3625853, at *3-4 (D.N.J. Aug. 15, 2011) (collecting cases).

In deciding whether an individual is an employee or an independent contractor under the WPCL, Pennsylvania courts apply the same multi-factor test used in the context of misclassification claims under the Workers' Compensation Act (WCA) and the Unemployment Compensation Act (UCA):[7]

> In determining whether a relationship is one of employee-employer or independent contractor, certain factors will be considered which, while not controlling, serve as general guidance to the Court. These factors include: the control of the manner that work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the work or occupation; the skill required for performance; whether one employed is engaged in a distinct occupation or business; which party supplies the tools; whether payment is by the time or by the job; whether the work is part of the regular business of the employer, and the right to terminate the employment at any time.

*Morin*, 871 A.2d at 850 (quoting *Lynch v. Workmen's Comp. Appeal Bd.*, 554 A.2d 159, 160 (Pa. Commw. Ct. 1989), which addressed misclassification under the WCA). Chief among these factors, if not the object of this test, is whether the alleged employer possessed the *right to control* the alleged employee. *E.g.*, *id.* ("Paramount for our consideration among these factors is the right of an individual to control the manner that another's work is to be accomplished."); *Am. Road Lines v.*

---

[7]  *Morin v. Brassington*, 871 A.2d 844, 849 (Pa. Super. Ct. 2005) (citing *Frank Burns, Inc. v. Interdigitial Commc'ns Corp.*, 704 A.2d 678, 680 (Pa. Super. Ct. 1997), for the proposition the WCA and UCA provide the most appropriate definition of employee for purposes of the WPCL).

*Workers' Comp. Appeal Bd.*, Nos. 2419 C.D. 2010 & 2428 C.D. 2010, 2012 WL 581101, at *6 (Pa. Commw. Ct. Feb. 23, 2012) ("The key factor is whether the alleged employer had the right to control the work to be done, and the manner in which work is performed. We find control in an employment relationship exists where the alleged employer: possesses the right to select the employee; the right and power to discharge the employee; the power to direct the manner of performance; and, the power to control the employee." (internal citations omitted)); *Lynch*, 554 A.2d at 160 (holding "the right to control is the most persuasive indication" of whether an individual is an employee or an independent contractor). As several Pennsylvania decisions have made clear, "[a] servant is the employe[e] of the person who has the Right of controlling the manner of his performance of the work, irrespective of whether he actually Exercises that control or not." *J. Miller Co. v. Mixter*, 277 A.2d 867, 870 (Pa. Commw. Ct. 1971) (quoting *Mature v. Angelo*, 97 A.2d 59, 60 (Pa. 1953)); *accord Rodgers v. P-G Publ'g Co.*, 166 A.2d 544, 546 (Pa. Super. Ct. 1961) ("It is not the fact of actual interference or exercise of control by the employer, but the existence of the right or authority to interfere or control which renders one a servant rather than an independent contractor.").

AEX's right to control the manner and means by which the class members perform their work can be determined through evidence common to the class. Plaintiffs' proffered dispatcher declarations, deposition testimony, and AEX standard forms show, by a preponderance of the evidence, that AEX has instituted certain policies governing contractors' performance that apply uniformly to all signatories of the TBA. These policies include mandates as to the delivery route to be used and the order in which deliveries are to be made, requirements to display photo identification and and wear clothing identifying drivers as AEX agents, requirements to call frequently to update

16

AEX about deliveries, requirements to request days off in advance, prohibitions against having passengers during deliveries, obligations to carry spare keys and a cellular phone, and other performance requirements, all of which are enforced through surprise audits and fines. Moreover, the remaining factors in this test—the driver's responsibility for the job's result only, the terms of the agreement, the nature of the work, the skill required, whether the driver is engaged in a distinct occupation or business, the supplier of the tools, the payment structure, whether delivery service is part of AEX's regular business, and termination rights—also do not require individualized analysis.

AEX argues many of the allegedly common policies are not uniformly enforced and are not indicative of an employment relationship. Even assuming these arguments are true, they do not preclude class certification as to the WPCL claim. As discussed, the right to control, not the degree of control actually exercised, is key under the WPCL. *E.g.*, *Morin*, 871 A.2d at 850; *J. Miller Co.*, 277 A.2d at 870. Significantly, at the class certification stage, Plaintiffs' burden is not to prove each element of their claim, but to show each element is capable of proof through common evidence. *Hydrogen Peroxide*, 552 F.3d at 311. In a factually similar case involving multi-district litigation concerning the misclassification of FedEx delivery drivers, the district court certified a class of Pennsylvania drivers asserting claims under the WPCL upon finding FedEx's general policies were sufficient to resolve the issue of right to control. *FedEx Ground*, 273 F.R.D. at 469-70. Having found the central issue in the WPCL claim can be resolved by evidence common to the class, it follows common questions of law and fact predominate over individual ones.

Next, this Court must satisfy itself that a class action provides a superior method to adjudicate this claim. The superiority requirement necessitates an analysis of whether a class action

is the best manner to render a "fair and efficient adjudication of the controversy." *Newton*, 259 F.3d at 186. Courts must render a holistic determination based on "multiple points of view: the judicial system, the potential class members, the present plaintiff, the attorneys for the litigants, the public at large, the defendant, and the issues." *Chakejian v. Equifax Info. Servs.*, 256 F.R.D. 492, 501 (E.D. Pa. 2009). Ultimately, the superiority requirement requires courts to weigh the merits of the class action device against the merits of individual adjudications. *See In re Cmty. Bank of N. Va.*, 418 F.3d 277, 309 (3d Cir. 2005).

In considering the factors set forth in subsection 23(b)(3),[8] this Court finds no class member has a greater or lesser interest than Plaintiffs in controlling the litigation. Other litigation by class members against AEX—a collective action under the Fair Labor Standards Act, which any class member may elect to join—does not counsel against certification. This Court is an able and appropriate forum, and the difficulties in identifying the class members are low, considering that AEX is able to readily identify the TBA signatories. Indeed several courts have certified classes of delivery drivers alleging similar claims. *See, e.g.*, *FedEx Ground*, 273 F.R.D. at 470; *Dalton*, 270 F.R.D. at 566; *Phelps*, 261 F.R.D. at 564.

Although AEX argues individual inquiries must be conducted into the number of hours worked and pay deductions taken, the need for individualized damages calculations is not a reason to deny class certification. *Cmty. Bank of N. Va.*, 418 F.3d at 305-06. This is especially true where,

---

[8] The factors pertinent to finding predominance and superiority are: (A) the class members' interest in individually controlling the prosecution of separate actions; (B) the extent and nature of any class member's litigation concerning the controversy; (C) the appropriateness of concentrating the litigation in this forum; and (D) any likely difficulties in managing the class action. Fed. R. Civ. P. 23(b)(3).

18

as here, damages such as deduction reimbursements and backpay are capable of simple calculation.

Additionally, AEX's argument that its affirmative defense of "good faith assertion of a right of set-off" requires individualized analysis is without merit.[9]  Def.'s Mem. in Opp'n to Class Certification 35.  AEX's potential liability under the WPCL arises from its failure to provide certain benefits to its drivers, who, if found to be AEX employees, are entitled to such benefits.  AEX cannot claim to have withheld these benefits to all its drivers based on a good faith belief they owed some debt to AEX, when the benefits were withheld based solely on AEX's policy of classify all drivers as independent contractors, irrespective of the driver's individual circumstances.

Accordingly, this Court finds Plaintiffs have satisfied the requirements of Rule 23(b)(3) as to their WPCL claim and will certify such class as modified above.

Turning now to the whether Plaintiffs have satisfied Rule 23(b)(3) as to their WMA claims, Pennsylvania courts also undertake a fact-intensive, multi-factor examination to determine whether a worker is an employee or an independent contractor under the WMA.  In *Commonwealth, Dep't of Labor & Indus. v. Stuber*, 822 A.2d 870, 873 (Pa. Commw. Ct. 2003), *aff'd*, 859 A.2d 1253 (Pa. 2004), the Pennsylvania Commonwealth Court adopted the case law and test utilized by federal courts under the Fair Labor Standards Act (FLSA).   Often referred to as the "economic realities test," the *Stuber* court listed the relevant factors for consideration:

---

[9]  A set-off is "a debtor's right to reduce the amount of a debt by any sum the creditor owes the debtor." *Blacks Law Dictionary* (9th ed. 2009).  The defense of set-off under the WPCL cited by AEX may be asserted, therefore, when an employer has failed to pay an employee based on a good faith belief the employee owes some debt to the employer.  43 Pa. Stat. Ann. § 260.10.  This certainly does not describe why AEX declined to provide its drivers WPCL prescribed benefits.

> (1) the degree of control exercised by the employer over the workers; (2) the worker's
> opportunity for profit or loss depending upon managerial skill; (3) the alleged
> worker's investment in equipment or material required for the tasks or the
> employment of helpers; (4) whether the service rendered requires special skill; (5) the
> degree of permanence of the working relationship; and (6) the extent to which the
> work is an integral part of the employer's business.

*Id.* at 874 (citing *Martin v. Selker Bros., Inc.*, 949 F.2d 1286 (3d Cir. 1991), and *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 754 (9th Cir. 1979)).  AEX urges the first factor—"the degree of control exercised by the employer over the workers"—precludes satisfaction of the predominance requirement because it calls for an individualized inquiry into AEX's *actual control* of each class member.  Plaintiffs, for their part, cite decisions that phrase this factor as "the degree of the alleged employer's right to control the manner in which the work is to be performed," *Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1383 (3d Cir. 1985); *Dailey v. Progressive Corp.*, No. 03-3797, 2003 WL 22794689, at *4, n.11 (E.D. Pa. Nov. 12, 2003),  to show their MWA claims, like their WPCL claim, are capable of resolution by common evidence because AEX's general policies demonstrate AEX's *right to control* the manner in which its drivers perform.  Reliance on this factor alone, however, is neither helpful nor appropriate.

Courts applying the economic realities test "look[] at the totality of the circumstances and a single factor, by itself, is not necessarily determinative."  *Stuber*, 822 A.2d at 874; *accord Martin*, 949 F.2d at 1293 (explaining "determination of the employment relationship does not depend on isolated factors but rather upon the circumstances of the whole activity" and "neither the presence nor the absence of any particular factor is dispositive").  The thrust of the test is to determine "whether, as a matter of economic reality, the individuals are dependent upon the business to which

they render service." *Martin*, 949 F.2d at 1293 (quotation omitted); *accord, e.g.*, *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988) ("The ultimate concern is whether, as a matter of economic reality, the workers depend upon someone else's business for the opportunity to render service or are in business for themselves."); *Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1538 (7th Cir. 1987) (explaining the degree of economic dependence on the alleged employer is the focus of all other factors); *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1311 (5th Cir. 1976) (same). The existence of the alleged employer's right to control the worker, therefore, is not dispositive of an employment relationship under the MWA, and a more probing inquiry into the relationship is necessary. *See Dole v. Snell*, 875 F.2d 802, 808 (10th Cir. 1989) ("[I]t is not what the [workers] *could* have done that counts, but as a matter of economic reality what they actually *do* that is dispositive." (quoting *Brock v. Mr. W. Fireworks, Inc.*, 814 F.2d 1042, 1047 (5th Cir. 1987))); *Donovan v. Sureway Cleaners*, 656 F.2d 1368, 1371 (9th Cir. 1981) (explaining economic reality inquiry requires that "in evaluating control, the test is not what the agent could do but what in fact the agent does do" (quotation omitted)); *cf. E.E.O.C. v. Zippo Mfg. Co.*, 713 F.2d 32, 37 (3d Cir. 1983) (discussing how hybrid test applied under Title VII differs from economic realities test under FLSA by incorporating the common law "right to control" test as the focus of the inquiry into the economic realities of the relationship).

Here, in deciding whether AEX's delivery drivers were employees under the MWA, this Court would have to make an individualized examination into each class member's relationship with AEX. For instance, this Court would have to separately determine if each class member depended upon AEX for his or her continued employment, as there is no common evidence that all class

members are in such a position that they cannot "offer their services to many different businesses and organizations." *DialAmerica*, 757 F.2d at 1385.  The need for this kind of individualized inquiry renders the MWA claims unsuitable for class-wide treatment.  This conclusion is supported by the *FedEx Ground* decision, in which the court declined to certify any class alleging a cause of action under which it would be necessary to make a driver-by-driver examination of his or her relationship with FedEx.  273 F.R.D. at 457, 465-66, 475, 477-78, 482, 487, 489-90 (denying class certification under Massachusetts employment law, Michigan law that utilizes an "economic reality test," Missouri law, South Dakota law, Iowa law, Virginia law, and Illinois law).

Because Plaintiffs have not satisfied the requirements of Rule 23(b)(3) as to their MWA claims (Counts III and VI), this Court will deny certification for the class and subclass alleging MWA violations.[10]

An appropriate order follows.

BY THE COURT:


\s\  Juan R. Sánchez
Juan R. Sánchez, J.

---

[10]   In light of the current FLSA collective action against AEX by AEX delivery drivers in Pennsylvania pending before this Court, *Spellman, et al. v. American Eagle Express, Inc.*, No.10-1764, the Court notes that although the claims in this case and *Spellman* are based on the same misclassification theory, this decision has no bearing on any future motion to decertify the collective action group in the FLSA case.  Although the law in this Circuit is unclear on how Federal Rule of Civil Procedure 23 compares to the requirements for collective certification found in 29 U.S.C. § 216(b)—requiring the collective action group to be "similarly situated"—the two standards are not identical.  Furthermore, comparing the FLSA collective action "opt-in" requirement with the "opt-out" procedures prescribed for Rule 23(b)(3) class actions suggests further differences between the two types of actions.