## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

———————————————————————
                                     )

**ELIZABETH SHERMAN, *et al.*,**       )
             **Plaintiff,**        )      **Civil Case No. 09-0575**
      **v.**                        )
                                     )

**AMERICAN EAGLE EXPRESS, INC.,**  )
**d/b/a AEXGROUP,**                 )
             **Defendant.**     )
——————————————————————— )

## PLAINTIFFS' ASSENTED-TO MOTION FOR PRELIMINARY APPROVAL
## OF CLASS ACTION SETTLEMENT AND
## PERMISSION TO SEND NOTICES TO CLASS MEMBERS

**I.**      **INTRODUCTION**

This case was brought as a putative Rule 23 Class Action based on Plaintiffs' state law claims on behalf of contractors who have provided transportation services to Defendant's customers in Pennsylvania. Plaintiffs' primary claims are that they were misclassified as independent contractors when they were in fact employees under the Pennsylvania Wage Payment Collection Law ("WPCL"), 43 P.S. §§ 260.1 *et seq*, and the Pennsylvania Minimum Wage Act ("MWA"), 43 P.S. §§ 333.101 *et seq.*, and have suffered damages arising from this alleged misclassification. On March 8, 2012 the Court certified Plaintiffs' WPCL claims as a class action and denied Plaintiffs' motion for class certification of its MWA and other claims.

After the filing of this lawsuit, Plaintiffs and Defendants engaged in extensive and voluminous discovery, including many depositions. The parties attended three full-day mediations over the course of this litigation. After extensive discussions and negotiations, and

1

on the eve of trial, Plaintiffs and Defendants reached a tentative agreement to settle this case, which of course, is subject to this Court's approval.[1]

In this motion, Plaintiffs request that this Court grant preliminary approval of this settlement and, in accordance with appropriate class action settlement procedures, allow Plaintiffs to send the attached Notices and Claim Forms to class members informing them of the settlement and how they may make a claim for a share of the settlement proceeds, and allow Defendant to send appropriate notice to governmental agencies as required by the Class Action Fairness Act ("CAFA").  The attached notices also inform class members of their right to object to the settlement.

Plaintiffs also request that this Court schedule a final fairness hearing approximately 100 days after this motion has been filed[2], at which time Plaintiffs will report to the Court regarding the results of the notice process, including the number of claims submitted and whether any class members have objected to the settlement.  The settlement proceeds would then be distributed to class members in two phases, the first payment being made by Defendant in October 2013 and the second payment being made by Defendant in October 2014.

As described herein, this settlement is a fair resolution of the claims the Plaintiffs have raised against Defendant.  Defendant specifically denies any liability or wrongdoing of any kind associated with the alleged claims.  Defendant contends, among other things, that its classification of class members was consistent with Pennsylvania law.

---

[1]     The proposed stipulation of settlement is attached hereto as Exhibit A.

[2]     The parties do not request that the Court schedule a hearing on this Joint Motion for Preliminary Approval, but if the Court deems a hearing appropriate, the parties request that it be scheduled promptly.

## II.   <u>TERMS OF THE FINANCIAL SETTLEMENT</u>

The settlement involves reasonable compensation for the Plaintiffs who alleged damages as a result of the claims asserted in this lawsuit.  Plaintiffs' counsel have done calculations based upon financial data relating to the proposed class which has been provided by Defendant, and as a result believe that the financial settlement discussed below will provide reasonable compensation to the Plaintiffs for the alleged wrongs they have suffered.  The total agreed upon settlement amount is seven hundred thousand dollars ($700,000.00) (the "Class Settlement Amount").  The parties' agreement includes the possibility of a partial reversion of settlement funds if some class members do not file claims forms.

The parties propose that, if approved by the Court, the total Class Settlement Amount of $700,000.00 shall be used to:

1.      Pay, if approved by this Court, an enhancement payment to the named Plaintiffs and one class member who was particularly active in trial preparation, for their service to the Class.

2.      Pay the certified class claims of the class members who the Plaintiffs represent in accordance with Fed. R. Civ. P. 23.

3.      Pay Plaintiffs' attorneys fees and costs.

From this gross amount, attorneys' fees and costs, which would be one-third of the Class Settlement Amount, would be deducted, and the Plaintiffs' counsel will be responsible for paying the substantial costs to administer and pay out the remaining Class Settlement Amount.

## III.   <u>PROCEDURES AND FORMULA FOR DISTRIBUTION OF THE CLASS FUNDS</u>

3

If this Court gives preliminary approval to the proposed settlement, a notice will be sent to each putative class member informing them of the settlement, how they can share in the distribution, and of their right to participate in the settlement or object to the settlement. (Attached hereto as Exhibit B).  Putative class members will also receive a claim form, which must be signed by the class member to take part in the settlement.  (Attached hereto as Exhibit C). The notice will request that class members return their claim forms within 60 days.

The alleged damages in this case arise from the alleged misclassification of class members as independent contractors.  Plaintiffs' primary claim pursuant to the WPCL is that Defendant took unlawful deductions from the fees class members received for their services. Accordingly, each individual class member who submits a timely and valid Claim Form will receive an amount calculated pursuant to the formula below (his or her "Claim Amount"):

a.  Class counsel, with the approval of defense counsel, will determine the exact amount of deductions taken from each individual class members' fees during the class period who submitted a claims form, based on documentation previously provided by Defendant;

b.  Class counsel, with the approval of defense counsel, will determine what percentage each individuals' deductions are of the total deductions taken from all class members' fees;

c.  That percentage will be multiplied by the "net settlement amount" (the class settlement, minus attorney's cost, fees, administrative expenses and enhancement payments) to determine, with the approval of defense counsel, the amount each individual class member would receive in the event the net settlement amount were completely distributed;

d.  Class counsel, with the approval of defense counsel, will calculate the total amount of the funds claimed by class members (based on all timely submitted claims forms) and determine what percentage of the net settlement amount was claimed by class members– Defendant will be entitled to a partial reversion of the remainder of the net settlement amount (the class settlement, minus attorney's cost, fees, administrative expenses, enhancement payments and funds claimed by class members) according to the percentage of funds claimed in the following amounts:

4

| Percentage of Net Settlement Fund Claimed | Reversion |
|---|---|
| Less than 25% | 60% |
| 25-40% | 50% |
| 40-60% | 50% |
| More than 60% | 20% |

e.  After determining the reversion based on the percentage of the net settlement amount claimed, Class Counsel, with the approval of defense counsel, will determine the net remainder (net settlement minus the applicable reversion);

f.  The net remainder will be distributed to class members who timely submitted a claims form in the following manner, Class Counsel, with the approval of defense counsel will multiply the net remainder (the net settlement, minus funds claimed, minus the applicable reversion) by the percentage that each claimant's deductions represent of the total deductions taken from class members' fees.

g.  Defense counsel's approval (as referenced in the preceding ¶¶ a-f) shall be promptly given at each stage of the above delineated process and shall not be unreasonably withheld. Any and all disputes regarding Defense counsel's approval of the process delineated in the preceding ¶¶ a-f shall be promptly submitted to Judge Sanchez's assigned Magistrate Judge for resolution.

Based on the above described calculation, Class Counsel will provide to Defendants the amount owed to each class member.  No later than October 31, 2013, Defendant will provide to Class Counsel, (1) half of the total owed for attorneys' fees, (2) half of the total amount owed for incentive payments to class representatives, and (3) a check for each class member that has timely submitted a claim, for half of the total amount owed (as described in the preceding paragraphs) to that individual class member.

No later than October 31, 2014, Defendant will provide to Class Counsel, (1) half of the total owed for attorneys' fees, (2) half of the total amount owed for incentive payments to class representatives, and (3) a check for each class member that has timely submitted a claim, for half of the total amount owed (as described in the preceding paragraphs) to that individual class member.

5

Plaintiffs' counsel believes this formula, which will provide each class member with a proportionally accurate share of the recovery, is fair and reasonable.

As described above, the proposed settlement would also include a proposed enhancement payment of $32,000 to the four named plaintiffs and one class member.  Based on their individual levels of participation in the litigation and subject to court approval, Plaintiffs' counsel proposes that the enhancement payment be divided among the identified individuals as follows: Elizabeth Sherman shall receive $10,000; Anthony Sturgis shall receive $10,000; Mohamed Abushalieh shall receive $5,000; William Walsh shall receive $5,000; Ed Pahula shall receive $2,000.

Plaintiff Sherman brought this case forward and was an essential contact for Plaintiffs' counsel throughout the litigation.  Named plaintiffs Sturgis, Abushalieh and Walsh later joined this action.  The named plaintiffs were central to the prosecution of this case. All of the named plaintiffs spent many hours meeting with Plaintiffs' counsel and providing them with documents, information and analysis. Additionally, each of the named plaintiffs was deposed in connection with this action. Furthermore, Plaintiffs Sherman and Sturgis spent significant time meeting with Plaintiffs' counsel preparing to testify as witnesses at trial.  Finally, Plaintiff Sturgis attended two full day mediation sessions. Plaintiffs' counsel seeks a higher incentive payment for Plaintiffs Sherman and Sturgis to reflect their significant contributions to the litigation.

Class member Ed Pahula met with Plaintiffs' counsel several times to prepare to testify as a witness at trial.  Plaintiffs' counsel anticipated that Pahula would be their primary class member witness at trial.  Although Pahula was not a named plaintiff, Plaintiffs' counsel seeks an enhancement payment for him to reflect his significant contributions to the litigation.

6

The proposed enhancement payment is in a range that has routinely been approved by courts in class action settlements as a way of compensating class action representatives who have lent their names and efforts to prosecution and litigation on behalf of others.  Courts have recognized that such payments can also serve an important function in promoting class action settlements.  See Sheppard v. Consolidated Edison Company, 2002 WL 2003206, *5-6 (E.D.N.Y. 2002) (collecting cases); see also Ingram v. The Coco-Cola Company, 200 F.R.D. 685, 694 (N.D. Ga. 2001); Yap v. Sumintomo Corp., 1991 WL 29112, *9 (S.D. N.Y. 1991).

IV.   **THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND THEREFORE, SHOULD BE PRELIMINARILY APPROVED**

A.   **The Legal Standard for Preliminary Settlement Approval**

It is well-established that there is "an overriding public interest in settling class action litigation, and it should therefore be encouraged." In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004) (citing In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig., 55 F.3d 768, 784 (3d Cir. 1995) ("the law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"); In re Sch. Asbestos Litig., 921 F.2d 1330, 1333 (3d Cir. 1990) (noting that the court encourages settlement of complex litigation "that otherwise could linger for years")).  Before granting preliminary approval of a settlement, this Court must "determine whether the settlement is fundamentally fair, reasonable and adequate."  Ehrheart v. Verizon Wireless, 609 F.3d 590, 593 (3d Cir. 2010) (citation omitted).   Generally, the purpose of Fed. R. Civ. P. 23(e), which governs class settlements, "is to protect the unnamed members of the class." Id. (citing In re Warfarin Sodium Antitrust Litig., 391 F.3d at 534).  "The decision of whether to

7

approve a proposed settlement of a class action is left to the sound discretion of the district court." Girsh v. Jepson, 521 F.2d 153, 156 (3d Cir.1975).

Review of a proposed class settlement involves two steps: preliminary approval and a final "fairness" hearing.  Gates v. Rohm & Haas Co., 248 F.R.D. 434, 438-39 (E.D. Pa. 2008). "Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient." Id. (citation omitted).   At the preliminary approval stage, an initial presumption of fairness is established when the Court finds that "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."  In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig., 55 F.3d 768, 785 (3d Cir. 1995) (citation omitted).  "The preliminary approval decision is not a commitment to approve the final settlement; rather, it is a determination that 'there are no obvious deficiencies and the settlement falls within the range of reason.'"  Gates, 248 F.R.D. at 439 (citations and quotation marks omitted).

Once a settlement is preliminarily approved by the Court, notice of the proposed settlement and the fairness hearing is provided to class members. At the subsequent fairness hearing, class members may formally object to the proposed settlement.  Id. at 438-49.

**B.**     **The Proposed Settlement Satisfies the Requirements for Preliminary Approval**

 Although Plaintiffs believe that they have strong and meritorious claims, several concerns have led Plaintiffs' counsel to conclude that a settlement is preferable to proceeding to trial.  First, while Plaintiffs believe strongly in their claims under the Pennsylvania Wage Payment Collection Law, 43 P.S. §§ 260.1et seq. Defendant argued that it was not liable because class members were not its employees.  Defendant based its argument on several grounds, most

notably, that any control exercised over class members was pursuant to regulation and customer requirements.  Defendant further argued that the deductions taken from Plaintiffs' fees were authorized by the WPCL and thus were not recoverable. Furthermore, pending before the Court are Defendant's motion for summary judgment and Defendant's motion to decertify the class.  In reaching the settlement agreement, Plaintiffs' counsel considered the risk that Defendant may prevail on either of these pending motions.

In addition to settlement of the class claims, the named plaintiffs have agreed to waive their individual claims, the most significant of which is a claim for unpaid overtime under the MWA. Although the named plaintiffs have agreed to waive their state law overtime claim in this action, they have not waived any overtime claims they have brought under the FLSA in a related action, Spellman v. American Eagle Express, Inc., Civ. A. No. 10-01764. Accordingly, the named plaintiffs will not be prejudiced as a result of waiving their state law overtime claims.

In the present case, an examination of all these factors demonstrates that the proposed settlement is fair, reasonable, and adequate when compared to the risk of litigating this case to completion, including appeals.  First, the settlement allows the Plaintiffs to obtain compensation immediately rather than in years.  Second, if the matter were to go to trial and liability was found in favor of the Plaintiffs, Defendant would likely appeal.  Third, if Plaintiffs recovered a large verdict after trial, Defendant's financial condition could be seriously jeopardized which ultimately could affect Plaintiffs' ability to recover anything based on such verdict.

Furthermore, this motion, and the attached settlement agreement, supports a finding that the settlement was negotiated at arm's length by experienced counsel concerning *bona fide* disputes between their clients with respect to liability and the amounts due to members of the putative class, assuming misclassification occurred.  The case presented numerous and

4841-9245-9283.1

vigorously contested issues related to the classification of the class members and whether certain legal defenses provided Defendants with a complete or partial defense to liability.  The parties engaged in three full-day mediations with a respected mediators, and engaged in extensive discovery, including, the production of hundreds of thousands of relevant documents and numerous depositions.

Furthermore, Plaintiffs are represented by highly experienced and competent counsel who have litigated numerous wage and hour cases aggressively and successfully.  Notably, Plaintiffs' counsel, Harold L. Lichten, Esq., has extensive experience litigating and settling cases involving misclassification of workers as independent contractors.  Mr. Lichten was able to draw on that experience in negotiating the settlement in this case and in conceiving of the plan for notice to be distributed to class members and calculation of class members' settlement shares. Indeed, Mr. Lichten has represented workers in dozens of other class action cases raising similar claims nationwide.  Those settlements contained very similar terms to the proposed settlement in this case, including the same provision for attorneys' fees and the same basic method for notifying class members and distributing the settlement proceeds. Furthermore, Mr. Lichten's law firm, Lichten & Liss-Riordan, P.C., is a pioneer in the field of worker misclassification and has litigated and settled numerous class action matters filed in the federal courts.

Additionally, Plaintiffs' counsel, David J. Cohen, Esq., has worked on, and run, dozens of significant antitrust, consumer, employment and securities class actions.  Mr. Cohen has also worked on over a dozen employment law class actions in Pennsylvania.

Plaintiffs' counsel are thus well aware of the law in this area, and their experience has provided the plaintiff class with a high degree of expertise, which contributed to a favorable resolution of this case.  Furthermore, Mr. Lichten's firm is also experienced in the mechanics of

class settlement administration.  In the more than 30 other cases he has settled as class actions, there have been thousands of class members overall requiring active engagement in processing claims from these settlements and distributing settlement proceeds.

Furthermore, the settlement also proposes an enhancement payment of $32,000.  The proposed enhancement payment is fair and reasonable, given that the recipients of the payment initiated the lawsuit on behalf of their co-workers and were central to the prosecution of the case. It was through the initiative and contributions of the class representatives that the plaintiffs class are able to recover a portion of the deductions taken from their fees by Defendant.  The named plaintiff provided invaluable assistance to class counsel, including providing documents, responding to discovery, being deposed, attending mediations and preparing to testify at trial.

Courts have widely recognized that enhancement payments serve an important function in promoting enforcement of state and federal law by private individuals, while encouraging class action settlements.  See In re Relafen Antitrust Litig., 231 F.R.D. 52, 82 (D. Mass. 2005) ("Incentive awards are recognized as serving an important function in promoting class action settlements, particularly whereas here, the named plaintiffs participated actively in the litigation") (citation omitted); In re Compact Disc Min. Adver. Price Antitrust Litig., 292 F. Supp. 2d 184, 189 (D. Me. 2003) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit"); Savett, et al., "Consumer Class Actions: Class Certification Issues, Including Ethical Considerations and Counsel Fees and Incentive Payments to Named Plaintiffs," 936 PLI / Corp. 321, 340 ("It has become commonplace for the named representatives to request a special payment for having borne the flag and headed a class action. Most courts are receptive to this because they feel that private attorneys general should be

11

encouraged, and such incentives further the goals of federal and state laws"); see also, e.g., Sheppard v. Consol. Edison Co. of New York, Inc., 2002 WL 2003206, at *5-6 (E.D.N.Y. 2002) (collecting cases approving incentive payments).

It is not uncommon for courts to approve enhancement payments in the range of those requested in this case, and in even higher amounts.  See, e.g., Ingram v. The Coca-Cola Co., 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding $300,000 to each of four representative plaintiffs); In re Dun & Bradstreet Credit Servs. Customer Litig., 130 F.R.D. 366, 373-74 (S.D. Ohio 1990) (citing cases in support of incentive payments and awarding payments ranging from $35,000 to $50,000 for named plaintiffs); Yap v. Sumintomo Corp. of Am., 1991 WL 29112, *9 (S.D.N.Y. 1991) (awarding $30,000 additional compensation to representative plaintiffs).

Indeed, enhancement payments serve a particularly important role in employment class actions, where the lead plaintiffs are risking their livelihood to bring the case forward on behalf of their fellow co-workers.  Courts have recognized the important role of class actions in the employment context precisely because of this very real element of potential retaliation.  See, e.g., Overka v. Am. Airlines, Inc., 265 F.R.D. 14, 24 (D. Mass. 2010)) (in certifying national class of skycaps challenging $2 per bag curbside check-in charges, court noted with approval skycaps' argument that "class adjudication is superior in the employment context because fear of employer retaliation may have a chilling effect on employees bringing claims on an individual basis" and held that class action "is a superior method for adjudication of the controversy"); Perez v. Safety-Kleen Systems, Inc., 253 F.R.D. 508, 520 (N.D. Cal. 2008) (concluding class action was superior because, inter alia, "some class members may fear reprisal"); Guzman v. VLM, Inc., 2008 WL 597186, at *8 (E.D.N.Y. 2008) (noting "valid concern" that "many employees will be reluctant to participate in the action due to fears of retaliation").

12

In light of the arm's-length hard fought negotiation in this case and Plaintiffs' counsel's prior experience and expertise in this area of law, the Court should find this proposed settlement to be fair, reasonable, and adequate and should issue preliminary approval.

## V.   THE REQUESTED ATTORNEYS' FEES AND COSTS ARE FAIR, REASONABLE, AND SUPPORTED BY APPLICABLE PRECEDENT

In the motion for final approval, Plaintiffs' counsel will request an award of attorneys' fees and costs which will provide them with a net of $231,000, approximately one-third of the total settlement.  This amount is significantly less than Plaintiffs' counsels' lodestar for this case. To date, Plaintiffs' counsel has expended over 2,000 hours on this litigation. Thus, their fee request is well below their hourly rate. This award would cover all costs incurred to date by Plaintiffs' counsel, as well as the significant costs Plaintiffs' counsel will incur in the next several months administering the settlement fund, calculating actual share distributions, taking care of all mailings and filings, etc.  To date, Plaintiffs' counsel have paid for half of the mediation fees as well as fees related to filing and investigating this case and will incur additional expenses related to mailings and other costs associated with administering the class fund.  Further, Plaintiffs' ability to administer the class settlement without hiring a class action settlement administrator will result in a substantial savings to the settlement fund, which can then be more properly used to pay distribution shares to class members.

The proposed notice of settlement will inform class members that approximately one-third of the settlement proceeds would be used to pay for all attorneys' fees and costs based on the fact that Plaintiffs' counsel accepted this case on a fully contingent arrangement with no payment of fees or expenses by any client.  Further, the lead Plaintiff signed a Retainer Agreement providing that counsel would receive one-third of the proceeds received in any

13

judgment or settlement.  Courts generally favor awarding fees from a common fund based upon a

percentage of the fund.  As the Supreme Court has explained:

> This Court has recognized consistently that a litigant or lawyer
> who recovers a common fund for the benefit of persons other than
> himself or his client is entitled to reasonable attorneys' fee from
> the fund as a whole . . . jurisdiction over the fund involved in the
> litigation allows the Court to prevent . . . inequity by assessing
> attorneys' fees against the entire fund thus spreading fees
> proportionally among those benefited by the suit.

Belling Company v. Van Gemert, 444 U.S. 472, 478 (1980); see also, McDonough v. Toys "R"

Us, Inc., 834 F. Supp. 2d 329, 340–43 (E.D. Pa.2011) (approving attorneys' fees of 33 percent of

the settlement fund and noting that fees may range as high as 45 percent of a common fund).

Thus, a one-third attorneys' fee in a common fund case has been consistently approved as

reasonable.  See City National Bank v. American Commercial Financial Corporation, 657 F.

Supp. 817 (W.D. N.C. 1987); Zeid v. Open Environment Corporation, C.A. No. 96-12466-EFH

(D. Mass. 1999).  Given this precedent, approving a one-third recovery for attorneys' fees in this

class action case, which includes all costs and expenses, is reasonable.

**VII.   Conclusion**

For the reasons set forth herein, Plaintiffs respectfully request that this Court grant

preliminary approval of this proposed settlement, sign the proposed order attached as Exhibit A,

and allow Plaintiffs to send class members the proposed notices and claim forms attached hereto

as Exhibit B and C.

14

Dated: April 12, 2013                     _/s/ Harold L. Lichten_____
                                          On behalf of Elizabeth Sherman
                                          And all other similarly situated
                                          Harold L. Lichten, Esq.
                                          *Pro hac vice*
                                          Elizabeth Tully, Esq.
                                          *Pro hac vice*
                                          LICHTEN & LISS-RIORDAN, P.C.
                                          100 Cambridge Street, 20th Floor
                                          Boston, MA 02114
                                          hlichten@llrlaw.com
                                          (617) 994-5800

                                          David J. Cohen, Esq.
                                          KOLMAN ELY, P.C.
                                          414 Hulmeville Avenue
                                          Penndel, PA 19047
                                          dcohen@kolmanlaw.net
                                          (215) 750-3134

## CERTIFICATE OF CONFERENCE

I hereby certify that I have discussed this motion with counsel for Defendant American Eagle Express, Inc. and that Defendant assented to the relief requested.

                                          _/s/ Harold L. Lichten_____
                                          Harold L. Lichten

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2013 I served a copy of this Motion by electronic filing on all counsel of record in this case.

                                          _/s/  Harold L. Lichten_____
                                          Harold L. Lichten

15

4841-9245-9283.1